**BIENVILLE PARISH POLICE JURY**

v.

**UNITED STATES POSTAL SERVICE and United States of America.**

**and**

**Teresia Gail HOWARD**

v.

**UNITED STATES of America and Bienville Parish Policy Jury.**

Civil Action Nos. 97–1951–S, 97–2214–S.

United States District Court,
W.D. Louisiana,
Shreveport Division.

April 29, 1998.

Kenneth Mascagni, Julia E. Blewer, Cook Yancey, et al., Shreveport, LA, for Police Jury of Bienville Parish, plaintiff.

Robert W. Sharp, Jr., Sharp & McVea, Ruston, LA, for Teresia Gail Howard, plaintiff.

John Robert Halliburton, U.S. Atty's Office, Shreveport, LA, for U.S. Postal Service and U.S., defendants.

Kenneth Mascagni, Julia E. Blewer, Cook Yancey, et al., Shreveport, LA, for Police Jury of Bienville Parish, defendant.

### RULING

NAUMAN S. SCOTT, District Judge.

Before the court by referral is a Motion for Summary Judgment filed by defendant, the United States of America, against third-party defendant Bienville Parish Police Jury. The court has jurisdiction over this consolidated personal injury action and third-party demand pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b) and 28 U.S.C. § 2671 et seq. For reasons discussed herein, the motion is **DENIED** with respect to the Bienville Parish Police Jury's claim for contribution and **GRANTED** with respect to he Bienville Parish Police Jury's claim for indemnity.

### I. Factual Background

The undisputed facts are as follows. At approximately 1:20 P.M. on Friday, September 1, 1995, Teresia Howard ("Howard"), a private citizen, and Rebecca Hood ("Hood"), a United States Postal Service, ("Postal Service") employee, were involved in a head-on collision at a tight bend on Bienville Parish Road 752. At the time of the accident, Hood was working within the course and scope of her employment as a rural letter carrier for the Postal Service. Hood's automobile liability policy carrier at the time was State Farm Mutual Automobile Insurance Company ("State Farm").

On May 16, 1996, Howard executed a settlement and release with defendants Hood and State Farm for $25,000, which represented Hood's policy limit. The release was executed on a pre-printed form with blanks for the amount of consideration, the names of the released parties, the date of the accident, the date of execution of the release, and the signatures of the releasing party and a witness. In the blank space for the names of the released parties is handwritten "Rebecca L. Hood + State Farm Mutual Automobile Insurance Co." The form also contains a pre-printed omnibus clause purporting to release the "heirs, executors, administrators, agents, and assigns [of the named parties], and all other persons, firms, or corporations liable or, who might be claimed to be liable, ... from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever [arising out of the accident]." The pre-printed release contained no reservation of rights in favor of Howard.

### II. Procedural Background

Howard initiated the primary action in this litigation against the United States, the Postal Service, Rebecca Hood, State Farm, the State of Louisiana, and the Bienville Parish Police Jury ("the Parish") seeking to recover for personal injuries allegedly suffered as a result of the accident. In her complaint, Howard alleges that the United States and the Postal Service are liable under the theory of *respondeat a superior* for the negligent driving of their employee, Hood, and that the Parish is liable for negligently designing, constructing, and maintaining the road on which the accident occurred.[1] Howard also alleges that the Parish is strictly liable for her injuries.

Since the filing of Howard's complaint, defendant United States has been substituted for defendants Hood and the Postal Service as the only proper party defendant under the FTCA. Furthermore, Hood and State Farm have been dismissed with prejudice after set-

---

1. Specifically, as against the Parish, Howard alleges that the Parish constructed an unreasonably hazardous highway, failed to properly mark the centerlines or "fog lines" on the highway, failed to post speed limit signs or other traffic signals, failed to warn motorists of the allegedly dangerous condition of the curve, and allowed vegetation to obscure both the shoulder of the highway and a motorist's view of oncoming traffic. *Complaint*, No. 97–2214, Doc. # 1 at p. 5 (W.D.La. Nov. 12, 1997).

tling with Howard. Thus, the United States and the Parish remain the only defendants. Howard's action, *Teresia Gait Howard v. United States of America and Police Jury of Bienville Parish,* No. 97–2214 (W.D.La. Nov. 12, 1997), has been consolidated with the third-party demand in *Police Jury of Bienville Parish v. U.S. Postal Service and United States of America,* No. 97–1951 (W.D.La. Sept. 30, 1997), discussed below.

Ancillary to the primary litigation, the defendant Parish brought a third-party demand for indemnity or contribution against the United States. The Parish alleges in its demand that the accident was caused solely by the negligence of the United States itself and/or through its employee, Hood. Therefore, the Parish contends, it should be indemnified or given contribution for any damages it is found to owe Howard. With respect to the claim for indemnity, the Parish relies solely on the basis of tort, or quasi-contractual, indemnity, as opposed to contractual indemnity. It is with respect to the third-party demand of the Parish that the United States now moves for summary judgment.

### III. Movant's Argument

The United States contends that it is a non-excluded, additional insured covered under Hood's policy with State Farm. "Ms. Howard totally released both the primary insured, Mr. [sic] Hood, and the insurer, State Farm. In doing so, she waived whatever claims she may have against the additional insured under the policy, the United States Postal Service. Since the Postal Service has been released from all liability by Ms. Howard, it cannot be derivatively liable to the Bienville Parish Police Jury on the same cause of action." *Memorandum In Support of Defendant's Motion for Summary Judgment,* No. 97–1951, Doc. # 4 at p. 6 (W.D.La. Dec. 29, 1997).

The basis is unclear for movant's contention that, by releasing Hood and State Farm, Howard also "waived whatever claims she may have against the additional insured under the policy, the United States Postal Service." *Id.* Movant could mean that, without an express reservation being made, its alleged additional-insured status creates a special relationship between it and State Farm

whereupon a release of State Farm automatically constitutes a release of all additional insureds. Or, the United States could mean that, without. an express reservation being made, the United States was included in the broad, omnibus release of "all other persons, firms, or corporations liable or, who might be claimed to be liable [to Howard]."

Regardless of the basis for the United States' argument, for reasons discussed below, the motion is **DENIED** with respect to the Parish's claim for contribution, and **GRANTED** with respect to the Parish's claim for indemnity.

### IV. Summary Judgment Standard

A motion for summary judgment will be granted only where "the pleadings, depositions, answers to interrogatories, and admissions on file, if any," when viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed.R.Civ.P. 56(c). Where the moving party shows that "there is an absence of evidence to support the non-moving party's case," *Celotex Corp. v. Catrett,* 477 U.S. 317, · 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the non-moving party must then come forward with specific facts showing that there is a genuine factual issue for trial. Fed.R.Civ.P. 56(e). Should the non-moving party fail to so respond, summary judgment, if appropriate, shall be entered. Fed. R.Civ.P. 56(e). However, the judge is not to weigh the evidence at the summary judgment phase, but merely determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If a reasonable jury could return a verdict for the nonmoving party, summary judgment will not lie. *Id.* at 248, 106 S.Ct. 2505.

### V. Law and Analysis

#### A. Choice of Law

Cases heard under the FTCA are governed by the applicable law of the state in which the incident *sub judice* occurred. Thus, substantive issues with respect to the Parish's claim for indemnity or contribution

will be analyzed under principles of Louisiana law.

### B. Solidary Liability

██ Tortfeasors who collectively owe but a single obligation to a tort victim are liable *in solido* to the victim. La.Civ.Code Ann. art. 1794 (West 1987). This civil law concept is the functional equivalent of the common law principle of joint and several liability. *Touchard v. Williams,* 617 So.2d 885, 889 (La.1993). To be obligated *in solido,* tortfeasors need not act in concert, as "[a]n obligation may be solidary though it derives from a different source for each obligor." La.Civ.Code Ann. art. 1797 (West 1987). "When the actionable negligence of two tortfeasors contributes in causing harm to a third party, each of them is responsible for the damage. They are solidarily liable." *Dixie Drive It Yourself System New Orleans Co. Inc. v. American Beverage Co.,* 242 La. 471, 137 So.2d 298, 301 (1962).

██ In the context of vicarious liability, an employee and employer are not joint tortfeasors, since "[l]iability is imposed upon the employer without regard to his own negligence or fault; it is a consequence of the employment relationship." *Sampay v. Morton Salt Co.,* 395 So.2d 326, 328 (La.1981). "Although the employer and employee are not joint tortfeasors, they are nonetheless each obligated for the same thing—total reparation of the damages to the victim. The derivative nature of the employer's liability is of no concern to the victim. . . ." *Id.* Thus, a vicariously liable employer will be liable *in solido* with a third-party whose actions contributed to a unified harm.

██ Applying the above principles, this court holds that, when viewed in the light most favorable to the nonmoving party, a reasonable jury could find that the United States (through its employee Hood) and the Parish were both negligent and that their combined negligence caused the accident and Howard's injuries. As a matter of law, and based on such reasonable findings of fact, the Parish and United States would be solidary obligors to Howard.

### C. Contribution

As between themselves solidary obligors have rights of contribution and indemnity. La.Civ.Code Ann.art. 1804 (West 1987); La.Civ.Code Ann.art. 2324(B) (West Supp.1996), amended by Act No. 3, 3 West La.Sess.Law Serv. No. 1, at 3–4 (1996) (abolishing solidary liability for joint tortfeasors who did not act in concert) (hereinafter "Art. 2324(B)," pre-1996 amendment). "[L]iability for damages caused by two or more persons [who have not conspired to commit an intentional or willful act] shall be solidary only to the extent necessary for the person suffering injury, death, or loss to recover fifty percent of his recoverable damages. . . . Under the provisions of this Article, all parties shall enjoy their respective rights of indemnity and contribution." Art. 2324(B), pre-1996 amendment.

██ As a potentially solidary obligor, the Parish's right to contribution arose at the time of the delict (i.e., at the time when the accident between Hood and Howard occurred). *See Cole v. Celotex Corp.,* 599 So.2d 1058, 1071–72 (La.1992). The Parish has chosen to pursue that right by filing the present third-party demand, which is permitted by Louisiana Civil Code articles 1804 and 1805. (West 1987).

To be granted summary judgment on the claim for contribution, the United States would have to introduce undisputed material facts showing that no reasonable jury could find that the combined negligence of the Parish and the United States, by itself or through its employee, caused Howard's injuries. Such a showing would preclude holding them solidarily liable, and would eliminate the Parish's right to contribution arising therefrom. The United States has not carried this burden. In fact, in its motion and accompanying memorandum of law, movant did not even deny that its employee was negligent.

Rather, the undisputed facts provided with the United States' motion primarily relate to the release given by Howard to Hood and State Farm, rather than to an absence of negligence on the part of Hood and/or the United States. However neither interpretation of the United States' argument regard-

ing the effect of the release executed by Howard entitles it to summary judgment on the Parish's claim for contribution.

█ The court need not reach the merits of the first possible interpretation that, as an additional insured on Hood's automobile liability policy, the United States was released implicitly with State Farm and Hood when Howard neglected to reserve rights against it. Movant essentially admitted this argument is without merit when it stated that "[a]fter review of the Opposition To Summary Judgment filed by the Bienville Police Jury, we concur that the State Farm Policy *does exclude* the United [sic] as an additional insured under the policy." *Memorandum in Reply to Opposition to Motion for Summary Judgment,* No. 97–1951, Doc. #21 at p. 1 (W.D.La. Feb. 20, 1998) (emphasis added). This admission defeats the premise that any and all obligations of the United States to Howard extinguished with the release, which, if true, would have precluded subrogation of the Parish to Howard's rights against movant (i.e., contribution). La.Civ.Code Ann.art. 1803 (West1987).

█ Moreover, the court is not persuaded by the second possible interpretation that, when Howard neglected to reserve rights against it, the United States was released through the omnibus clause purportedly releasing "all other persons, firms, or corporations liable or, who might be claimed to be liable (to Howard)." The very case cited by the United States in a companion motion for summary judgment against the plaintiff, Howard, is the ultimate downfall of this contention.

In *Davis v. Huskipower Outdoor Equipment Corp.,* the United States Fifth Circuit had before it a case similar to the case at bar here. 936 F.2d 193 (5th Cir.1991). A party not named in a release executed by the plaintiff sought the benefit of the release under Louisiana law. *Id.* at 196. Like the release executed by Howard in the instant case, the release in *Davis* contained an extremely broad omnibus clause purporting to release essentially all persons or entities then or ever existing from any possible claim. *Id.* at 195 n. 1. However, there is one dispositive difference between the release at issue in

*Davis* and the one at issue here—the *Davis* release was drafted specifically for that dispute, whereas the release at issue here is on a pre-printed, fill-in-the-blank form. The *Davis* court held that "[o]n the basis of the distinction between preprinted fill-in-the-blank releases and drafted releases, then *Migliore* suggests that the drafted release in this case effectively released both named and unnamed parties." *Id.* at 197 (citation omitted). The *Davis* court would give effect to a broad release only where it is drafted, rather than pre-printed.

In the same vein, the Louisiana Supreme Court, in a case where the release was on a pre-printed form, stated that "[i]n the case before us the format of the release differed from that in *Migliore* in that the names of specific defendants were typed onto the printed form; we may not presume intent to release all possible defendants." *Cates v. Wausau Ins. Co.,* 508 So.2d 1031, 1032–33 (La.Ct.App.1987); *see also Tinsley v. Packard Truck Lines, Inc.,* 846 F.2d 334, 337 (5th Cir.1988) ("Under [Louisiana Civil Code] Article 1803 there is only a *presumption* that general language in a release is intended to release parties not specifically named in the release. And under *Cates,* that presumption is fully rebutted where the names of specific parties are typed or handwritten on a printed form.").

Based on such precedent, this court holds that, since the release executed by Howard was on a pre-printed, fill-in-the-blank form, it manifests an intent to release *only* the parties specifically named therein (Rebecca Hood and State Farm), and effect will be given only to release those parties. Again, the ultimate effect of this is that any potential obligation to Howard by the United States was *not* extinguished by the release, thus preserving the Parish's right to subrogation of the plaintiff's rights against movant through its demand for contribution.

Consequently, the United States' motion for summary judgment with respect to the Parish's third-party demand for contribution is hereby **DENIED.**

### D. Indemnity

In addition to the right of contribution, solidary obligors have the right of indemnity. Arts. 1804 and 2324(B), pre–1996 amendment. Indemnity may arise contractually or under a tort, or quasi-contract, theory. In the case at bar, we are concerned only with tort indemnity because the third-party plaintiff has not alleged a contractual theory of indemnity.

■ Situations where tort indemnity arises are extremely limited. To qualify, a solidary obligor must be free of actual fault and be liable only technically, vicariously, or constructively (a.k.a. passively).[2] *Appalachian Corp. v. Brooklyn Cooperage Co.,* 151 La. 41, 91 So. 539, 541 (1922). This is because the law will rectify the unjust enrichment which occurs when the more culpable tortfeasor escapes liability while the technically culpable yet liable tortfeasor pays. However, if "[the fault of the party seeking indemnity] is, rather, actual, only contribution is available." *Ducre v. Executive Officers of Halter Marine, Inc.,* 752 F.2d 976, 985 (5th Cir.1985).

Technical, vicarious, or constructive liability often arises under Louisiana Civil Code article 2317, which provides strict liability for "damage ... which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody." (West1997). For example, when a property owner delegates some aspect of the property's maintenance to an independent contractor, whose negligent performance of the duty injures a third party, the owner of the property would be vicariously and strictly liable to the injured party under article 2317. However, since the owner would only be vicariously liable, he would have a right to tort indemnity from the actually negligent independent contractor. *See, e.g., Williams v. City of Monroe,* 658 So.2d 820 (La.Ct.App. 1995) (holding that, where bridge owned by City of Monroe was unreasonably dangerous, but dangerous condition was created by State of Louisiana, City of Monroe was strictly liable for injuries but could be indemnified by State).

■ The vicarious strict liability aspect of article 2317 (damage caused by "things which we have in our custody") has often been used as a theory for holding governmental entities strictly liable for dangerous highway conditions such as those allegedly at issue in the instant case. *See id.* at 825–28. In those cases where the highway owner, strictly liable under article 2317, is distinct from the party responsible for its maintenance, the owner has been able to seek indemnity from that responsible party. *Id.* at 831–32. "Where two parties are liable for plaintiff's injuries, the defendant who is liable only as the owner of the unreasonably dangerous structure should be made whole by the defendant who actually caused the unreasonably dangerous condition for which the owner is strictly liable." *Id.* at 832. On the other hand, "indemnity is available only 'where the actual fault is *attributed* [to another].... It is never applicable where both parties are actually in the wrong.'" *Ducre,* 752 F.2d at 986 (emphasis, brackets, and ellipsis in original; footnote omitted).

■ Under the undisputed facts of the case at bar, a reasonable jury could find that, as alleged by the plaintiff (Howard) the Parish is strictly liable under 2317 for an unreasonably dangerous condition of the road which contributed to the accident. However, since the Parish is the designer, builder, maintainer, and owner of the road at issue, it

---

**2.** Louisiana courts have also referred to the distinction between actual fault and derivative fault as being the difference between active fault and passive fault. In those terms, the strictly liable party who was merely passively at fault can be indemnified by the party actively at fault. Passive fault does *not* mean nonfeasance. "The right to indemnity does not exist in favor of a joint tortfeasor whose act *or failure in the performance of a duty* was a contributory cause of the accident...." *Hebert v. Blankenship,* 187 So.2d 798, 803 (La.Ct.App.1966); *see also General Electric Co. v. Cuban American Nickel Co.,* 396 F.2d 89, 100 n. 18 (5th Cir.1968) (quoting language). The court in *Hebert* stated that defendant's failure to appreciate a risk to which it exposed the decedent "cannot be regarded as merely secondary or derivative." *Hebert,* 187 So.2d at 803. Thus, a reasonable jury's finding that the Parish's failure to maintain the road or to provide adequate warning signs would not be classified as passive fault and would not lead to indemnifiable strict liability under Louisiana Civil Code article 21317. (West 1997).

**570**

could not point to a third party as being *actually* responsible for creating the condition. In short, there is no one properly positioned from whom the Parish may be indemnified. The U.S. may be found by the jury to be partly, and actively, responsible for the accident, but the United States is most definitely *not* responsible for the condition of Bienville Parish Road 752.

To summarize, as the Fifth Circuit stated in *Ducre*, "[t]here is no foreseeable combination of findings, viewing the allegations of the pleadings and the evidence in the light most favorable to [the Parish] that could result in [the Parish] being cast in judgment for mere technical or passive fault." 752 F.2d at 985 (footnote omitted). Therefore, although the preceding analysis was not provided by movant, the United States' motion for summary judgment with respect to the Parish's demand for indemnity is nevertheless **GRANTED.**